UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SERGUEI M.,[1]

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-08026-TLN-AC

A# 071-497-639

**RELEASE ORDER**

This matter is before the Court on Petitioner Serguei M.'s ("Petitioner") First Amended Petition for Writ of Habeas Corpus ("Amended Petition").[2] (ECF No. 10.) Respondents rest on their response to the original habeas petition. (ECF Nos. 6, 12.) Petitioner filed a reply. (ECF No. 13.) For the reasons set forth below, the Court GRANTS the Amended Petition and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Court spells Petitioner's first name as it appears in the Amended Petition. (ECF No. 9 at 1.)

[2] Petitioner filed two copies of his First Amended Petition. (ECF Nos. 9, 10.) Because the two copies appear identical, the Court references the later-filed copy (ECF No. 10).

## I. Factual and Procedural Background

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is a noncitizen who entered the United States in February 1992 on a tourist visa. (ECF No. 2 at 3.) Immigration authorities initiated removal proceedings in 2006. (ECF No. 6-2 at 6–7; ECF No. 10 at 2.) In November 2010, an immigration judge entered an order of removal against Petitioner and denied Petitioner's requests for asylum, withholding of removal, and protection under the Convention Against Torture. (ECF No. 6-2 at 18–19; ECF No. 10 at 2.) The Board of Immigration Appeals affirmed the order on June 11, 2012. (ECF No. 6-2 at 3; ECF No. 10 at 2.)

Since September 13, 2012, Petitioner has lived in the United States under an order of supervision ("OSUP"). (ECF No. 6-1 at 12; ECF No. 10 at 2.) Petitioner has married a U.S. citizen, for whom he is primary caretaker; consistently attended his check-ins with U.S. Immigration and Customs Enforcement ("ICE"); was granted work authorization; and obtained a driver's license. (ECF No. 2 at 3.) Petitioner has no criminal convictions.[3] (*Id.*)

More than thirteen years after Petitioner's order of removal became final, around March 10, 2026,[4] ICE revoked Petitioner's release and took him into custody during a regular check-in appointment. (ECF No. 2 at 3; ECF No. 6 at 1.) The parties' papers give conflicting accounts of whether ICE explained why it was revoking Petitioner's release and whether ICE provided Petitioner an opportunity to respond to the reasons for the revocation. (ECF No. 6-1 at 12–13;

---

[3] While an immigration judge noted that Petitioner may have been charged with fraudulently obtaining a U.S. passport nearly two decades ago (ECF No. 6-4 at 3), there is no such evidence or contention before this Court. Respondents do not contest Petitioner's claim that he has no criminal history. (ECF No. 2 at 3; *see* ECF No. 6.) Nor is there any claim or evidence before this Court of any criminal charges. (*See* ECF Nos. 6-1 to 6-4.) Accordingly, the Court reasonably infers that Petitioner has no criminal convictions.

[4] The parties disagree about the date Petitioner was detained. The Petition and accompanying motion for temporary restraining order indicate Petitioner was re-detained on March 10, 2026, whereas Respondents' response indicates he was detained on March 11, 2026, but includes exhibits related to the re-detention dated March 10, 2026. (ECF No. 1 at 2; ECF No. 2 at 3; ECF No. 6 at 1; ECF No. 6-1 at 12–13.) Petitioner, through counsel, takes as true Respondents' March 11, 2026 date. (ECF No. 10 at 12–13.) Because the Court's analysis does not turn on the precise date Petitioner was re-detained, the Court assumes without deciding Petitioner was re-detained on March 10, 2026, as Petitioner represented when he was pro se.

ECF No. 10 at 2.) Respondents seek to remove Petitioner to Russia, the country listed in Petitioner's order of removal, but Petitioner contends he is not a citizen of Russia because he was a citizen of the U.S.S.R. at the time he arrived in the United States. (ECF No. 10-1 at 1; ECF No. 6-1 at 5; *see* ECF No. 6 at 1.)

Petitioner has now been detained for eight months, and he is currently detained at California City Detention Center in this District. He alleges his civil immigration detention violates 8 U.S.C. § 1231(a)(6) and is unconstitutional. (ECF No. 10 at 3–13.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner argues his detention for over six months violates his due process rights under the Fifth Amendment and *Zadvydas*.[5] (ECF No. 10 at 3–9.) Respondents assert Petitioner's detention is authorized by 8 U.S.C. § 1231 and 8 C.F.R. §§ 241.4 and 241.13 and does not offend *Zadvydas* because Petitioner has refused to cooperate in obtaining travel documents to Russia.[6]

---

[5] In the interest of judicial economy, the Court does not address Petitioner's remaining arguments.

[6] Respondents also contend the Petition is successive and his initial detention claims should be dismissed under the abuse of the writ doctrine because Petitioner filed another petition earlier in his detention. (ECF No. 6 at 2.) Finding relief warranted on *Zadvydas* prolonged detention

(*Id.* at 2–3.) Petitioner further argues Respondents have not met their burden of showing Petitioner refused to cooperate in facilitating his removal. (ECF No. 10 at 6–10.)

A. Petitioner's Alleged Non-Cooperation

Respondents argue Petitioner's detention should continue because the record shows Petitioner failed to cooperate in seeking travel documents to facilitate his removal, citing *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003), and *Lema v. I.N.S.*, 341 F.3d 853 (9th Cir. 2003). (ECF No. 6 at 3.) Although Respondents do not identify what part of the record supports their contention, Respondents' exhibits include one Notice of Failure to Comply that ICE issued to Petitioner on June 1, 2026. (ECF No. 6-1 at 5.) The notice informs Petitioner that he "failed to comply with an obligation to assist in [his] removal by refusing to complete the travel document application from Russia" on May 23, 2026. (*Id.*)

Petitioner contends Respondents have not met their burden to prove Petitioner has failed to cooperate. (ECF No. 10 at 6–9.) Petitioner recounts that officials from the Department of Homeland Security met with him in May 2026 to discuss his removal to Mexico, Guatemala, Moldova, or Russia. (*Id.* at 8; ECF No. 10-1 at 2.) Per Petitioner, although his conversational English skills do not extend to legal terminology, the May 2026 meeting was conducted in English, all documents were in English, and Petitioner was not offered a Russian interpreter. (ECF No. 10 at 8; ECF No. 10-1 at 2.) Petitioner declares that he did not understand the proposed removal process given the number of countries discussed and declined to sign any forms given his lack of understanding. (ECF No. 10-1 at 2.) He asserts the Notice of Failure to Comply fails to present information about what Petitioner did in May 2026 that might constitute a failure to comply. (ECF No. 10 at 8–9.) In their notice electing to rest on their prior response, Respondents argue Petitioner's claims that he should have had an interpreter and was confused at the May 2026 meeting "do not negate documented non-cooperation." (ECF No. 12 at 1.)

Under § 1231(a)(1)(C), the government can extend the detention of a noncitizen subject to a final order of removal beyond the removal period "if the [noncitizen] fails or refuses to make

grounds, the Court declines to address Respondents' abuse of writ arguments.

timely application in good faith for travel or other documents necessary to the [noncitizen]'s departure or conspires or acts to prevent the [noncitizen]'s removal subject to an order of removal." § 1231(a)(1)(C). The Ninth Circuit has upheld continued detention under § 1231(a)(1)(C) when a noncitizen "has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested by the [government]." *Pelich*, 329 F.3d at 1060 (quoting *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)).

In *Pelich*, the Ninth Circuit affirmed denial of a noncitizen's challenge to his indefinite detention based on the noncitizen's pattern of noncooperation. 329 F.3d at 1059. There, the noncitizen repeatedly refused to fill out a passport application for Poland, where he was born; Poland reserved its determination of the noncitizen's Polish citizenship until it received a passport application; and the noncitizen provided U.S. immigration officials with conflicting information about his name, birthplace, and nationality and about his parents' names, birthplaces, and residences. *Id.*

Similarly, in *Lema*, the Ninth Circuit affirmed the denial of a noncitizen's challenge to his indefinite detention. 341 F.3d at 857. There, the noncitizen, a national of Ethiopia, initially told the Ethiopian embassy that he was Eritrean, leading Ethiopia to decline to grant him travel documents, and thereafter refused to reapply to Ethiopia for travel documents or provide evidence of his Ethiopian nationality. *Id.* at 855, 857.

Here, Respondents have failed to meet their burden to show that Petitioner has not cooperated with his removal to warrant his continued detention.[7] The only evidence Respondents present of Petitioner's ostensible noncooperation is the single Notice of Failure to Comply that referenced a single instance of Petitioner's apparent failure to comply on May 23, 2026. (ECF No. 6-1 at 5.) Respondents do not contest that during that encounter, Petitioner did not understand the options immigration officials presented to him at the May 2026 meeting and did not have an interpreter despite having an incomplete command of the English language. (ECF

---

[7] Petitioner argues the clear and convincing standard governs Respondents' burden of proving noncooperation. (ECF No. 10 at 7.) Because the Court finds Respondents fail to meet their burden regardless of the applicable standard, the Court declines to adopt Petitioner's argument.

No. 10 at 8; ECF No. 12 at 1 (arguing Petitioner's factual claims do not change the legal analysis without rebutting the claims themselves).) The Court therefore accepts Petitioner's claim that he did not understand the proceedings at the May 2026 meeting. Declining to sign a form based on a lack of understanding does not constitute noncooperation. *See Sun v. Hernandez*, No. 2:26-cv-01013-JNW, 2026 WL 1194798, at *3 (W.D. Wash. May 1, 2026) (finding a monolingual Mandarin speaker did not fail to cooperate by requesting to consult counsel before signing anything ICE presented at a meeting at which the record did not indicate a translator was present). Accordingly, contrary to Respondents' contention, a single instance where Petitioner lacked understanding and was not provided an interpreter negates Respondents' sole evidence of noncooperation. (ECF No. 12 at 1.)

Even if Petitioner knowingly refused to cooperate on May 23, 2026, Petitioner's situation is also distinguishable from *Pelich* and *Lema*. There, the noncitizens obfuscated their national origins and repeatedly refused to apply or reapply for documents. *Pelich*, 329 F.3d at 1059; *Lema*, 855, 857. Here, Petitioner at most refused to fill out a travel document application one time six months ago. The record does not indicate Respondents subsequently provided him further opportunity to cooperate or remedy after providing him notice of the consequences of a failure to cooperate. (*See* ECF Nos. 6, 6-1.) Without more in the record to shed light on Respondents' efforts to secure Petitioner's cooperation and Petitioner's responses to those efforts, the Court finds Respondents have not met their burden of proving Petitioner's noncooperation.

B. *Zadvydas* Analysis

Additionally, Respondents have not presented evidence that there is a significant likelihood Petitioner will be removed in the reasonably foreseeable future. In *Zadvydas*, the United States Supreme Court considered prolonged immigration detention under § 1231(a)(6). 533 U.S. 678 (2001). The Court recognized a presumptively reasonable six-month period of detention to effect removal after an order of removal becomes final. *Id.* at 701. "[O]nce the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.* "[F]or detention to remain reasonable, as the period of prior

postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Respondents acknowledge *Zadvydas*'s presumption that detention is reasonable for six months but argue Petitioner's alleged noncooperation "takes *Zadvydas* off the table." (ECF No. 6 at 3.) Petitioner argues his detention is unconstitutionally prolonged under *Zadvydas* because he has been detained for over six months and there is no significant likelihood of his removal in the reasonably foreseeable future. (ECF No. 10 at 3–6.)

As discussed above, the Court finds Respondents have not met their burden of showing Petitioner has failed to cooperate in facilitating his removal. Accordingly, the Court finds Petitioner can avail himself of *Zadvydas*'s burden-shifting framework.

Petitioner has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has been subject to a final order of removal since June 2012. (ECF No. 6-2 at 3; ECF No. 10 at 2.) As Petitioner notes, however, ICE has not effectuated his removal in the intervening fourteen years, and is unaware of any progress towards removal, making his removal not significantly likely in the reasonably foreseeable future. (ECF No. 10 at 6.)

Respondents fail to provide evidence to rebut Petitioner's contention. Although Respondents intend to remove Petitioner to Russia, the notice revoking Petitioner's release indicated only that ICE is "seeking a travel document" for Petitioner. (ECF No. 6-1 at 12.) This seemingly preliminary effort to obtain a travel document is not compelling in the absence of evidence that Russia is likely to issue a travel document to Petitioner in the reasonably foreseeable future. *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025). The assertion is especially dubious given that Respondents present no evidence showing Russia would accept Petitioner, who was a citizen of the U.S.S.R., not Russia, upon his arrival to the United States. (ECF No. 2 at 3; ECF No. 10-1 at 1; *see* ECF Nos. 6, 12.) In similar situations where geopolitical change has occurred since a noncitizen's departure from their country of citizenship, courts have found removal not significantly likely in the reasonably

foreseeable future where the government fails to show why the country indicated in the order of removal would accept the noncitizen. *See, e.g.*, *Kargapolov v. Oddo*, No. 3:26-cv-00755, 2026 WL 1413057, at *3 (W.D. Pa. May 20, 2026) (finding there was no evidence ICE was "any closer to removing" a noncitizen born in the U.S.S.R. to Russia than when he was detained a year prior); *Vu*, 2025 WL 3114341, at *1, *6 (concerning noncitizen who left Vietnam as a refugee in the 1980s). Even if there was evidence of "some possibility that [Russia] will accept Petitioner at some point[,] . . . that is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (citing *Zadvydas*, 533 U.S. at 701).

Without any evidence that removal is significantly likely in the reasonably foreseeable future, under *Zadvydas*, Respondents lack authority to continue detaining Petitioner.

## IV. CONCLUSION

Accordingly, the First Amended Petition for Writ of Habeas Corpus (ECF No. 10) is GRANTED. Further, IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Serguei M. (A# 071-497-639) from custody under the same terms as his prior order of supervision. At the time of release, Respondents must provide a copy of this Order to Petitioner and return all of Petitioner's documents and possessions. Respondents must file a **notice of compliance** with this provision **within two (2) court days of this Order**.

2. Respondents are ENJOINED from re-detaining Petitioner absent a travel document to the country of removal and compliance with statutory and constitutional protections, including a minimum of seven-days' pre-deprivation notice and strict compliance with the requirements of 8 C.F.R. §§ 241.4(l), 241.13(i).

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is DENIED as moot.

///

///

///

4. The Clerk of the Court is directed to serve this Order on **California City Detention Center**, enter judgment in favor of Petitioner, and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE